UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:12-cv-22437-UU

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, a California
corporation,

      Plaintiff,

vs.

WELLS FARGO BANK, N.A., a National
Association bank, successor by merger to
Wachovia Bank, N.A.,

      Defendant.
_____/

## MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE
## AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. 9(b), 12(b)(6) and S.D. Fla. L.R. 7.1, Defendant Wells Fargo Bank, N.A., a National Association bank, successor by merger to Wachovia Bank, N.A. ("Wells Fargo"), moves to dismiss the Amended Complaint [DE 15] filed by Plaintiff Fidelity National Title Insurance Company ("Fidelity") with prejudice. In support of this motion, Wells Fargo submits the following memorandum of law:

**I.    PRELIMINARY STATEMENT & FACTUAL BACKGROUND**

    **A.    The Amended Complaint Does Not Cure the Pleading Deficiencies:**

Fidelity filed the original Complaint [DE 1-1] against Wells Fargo because Fidelity had paid on allegedly fraudulent title insurance policies and was looking to ameliorate its losses. While it was subrogated to the rights of its insureds to proceed against the allegedly fraudulent title agents, it wanted deeper pockets. It therefore took an assignment of one of the insured's claims against Wells Fargo for alleged fraud related to loan applications (not fraudulent title policies). Wells Fargo moved to dismiss, pointing out that the insured into whose shoes Fidelity had stepped had fully recovered and was not harmed. Fidelity thus amended and now asserts the subrogation claims it originally avoided. The subrogation claims are equally unavailing, however, because, among other reasons, Fidelity is only subrogated to the insureds' rights

1

against the title agents with respect to the insurance fraud. They are not subrogated to the insureds' rights against all people for all things.

> B.   **Fidelity Sues Wells Fargo to Recover for Its Own Agents' Wrongdoing:**

The Amended Complaint is based on a fraudulent scheme conceived by Fidelity closing agents Sherly Title, Inc. and Doral Title, Inc., and an individual who controlled those entities named Magile Cruz ("Cruz"). [DE 15 ¶ 9] According to the original Complaint, Cruz's entities formulated a scheme in which lenders Wilmington Finance, Inc. ("Wilmington") and Certified Home Loans of Florida, Inc. ("Certified") were induced to make residential mortgage loans to certain "straw borrowers." *Id.* ¶¶ 8-9. Sherly Title and Doral Title issued title insurance commitments and closing protections letters on behalf of Fidelity, but never paid off and satisfied the prior loans and liens at closing, which allegedly left Wilmington and Certified unsecured when these loans later went into default. However, Fidelity admitted that the lenders were able to recover on their policies and closing protection letters from Fidelity. *Id.* ¶¶ 9, 14, 24. As a result, Fidelity paid on the closing protection letters issued by its agents. Because Fidelity was only subrogated to the insured's rights with respect to the title claim, it only could proceed against Fidelity's own bad title agents. In an effort to buy a better claim, Fidelity paid Wilmington for an assignment of any claim it may have against Wells Fargo.

Wells Fargo explained in its motion to dismiss the original complaint [DE 9] that Wilmington had title insurance and was made whole, therefore it had no damages, a crucial element to a fraud cause of action. Fidelity's own damages could not be substituted for Wilmington's lack thereof to cobble together a hybrid cause of action. Acknowledging this flaw, Fidelity voluntarily amended it claims rather than responding to the Motion to Dismiss. Although the Amended Complaint is based on the same faulty facts laid out above, and the same causes of action previously asserted in the original Complaint, Fidelity now brings its claims under conventional theories of subrogation that it initially wanted to avoid. [DE 15 ¶ 33, 34]

Fidelity cannot escape the fact that the bad actor was its own agent – Cruz. She issued title insurance to Wilmington and Certified even though there were undisclosed liens on the title that were not settled at closing. This left Wilmington and Certified unsecured and unprotected. While Fidelity disclaims all liability for Cruz and her actions and attempts to distance itself from Cruz, Fidelity still settled the claims brought by Wilmington and Certified pursuant to the

policies Cruz issued, which claims **"were based upon the forged closing protection letters and title insurance commitments."** [DE 15 ¶¶ 29 and 30]

Despite the fact that Cruz was a Fidelity agent, Fidelity seeks to completely shift the losses it sustained from those title claims made relative to the "forged closing protection letters and title insurance commitments" to Wells Fargo because, as a peripheral part of Cruz's scheme, a former Wells Fargo employee, Nelson Bermudez ("Bermudez"): allegedly (a) issued false verifications of deposit ("VODs"), which Fidelity claims were included in unidentified loan packages issued to Wilmington and Certified; and (b) cashed checks by Cruz, including checks drawn on escrow accounts containing lender funds. [DE 15 ¶¶ 14, 15] For this reason, Bermudez pled guilty to one count of conspiracy to commit wire fraud and mail fraud. *Id.* ¶ 20.

Bermudez did not, however, issue the Fidelity title insurance policies, closing protection letters, or otherwise have any involvement in the real estate closings at issue. Bermudez is not alleged to have played any role whatsoever in the alleged "forged closing protection letters and title insurance commitments" that gave rise to Wilmington's and Certified's claims against Fidelity. [DE 15 ¶¶ 29 and 30] That is why Fidelity does not and could not sue Wells Fargo directly – it is clear from the pleadings the bank did absolutely nothing to harm Fidelity. Instead, Fidelity sought and obtained from one of the lenders, Wilmington, an assignment of Wilmington's rights.[1] Fidelity hoped, in this manner, to divorce itself from the wrongdoing of its own agents by stepping into Wilmington's shoes and suing Wells Fargo for Bermudez's alleged fraudulent involvement in obtaining the loans.[2] The sleight of hand is that Fidelity stands in

---

[1] Florida law prohibits the assignment of purely personal tort claims like those Fidelity pursues. *See, e.g., National Union Fire Ins. Co. v. Salter*, 717 So. 2d 141, 142 (Fla. 5th DCA 1998) ("[P]urely personal tort claims cannot be assigned.") It is well-established that fraud is a personal, non-assignable tort. See *Maling Corp. v. Ladan Corp.*, 85 So. 2d 607, 609 (Fla. 1956) ("fraud is personal to the one defrauded.") (citing *Putzer v. Homeridge Prop.*, 57 So. 2d 848, 852 (Fla. 1952) ("Fraud is personal to the one defrauded."); *Shee-Con, Inc. v. Al Seim Appraisal Serv., Inc.*, 427 So. 2d 311, 312 (Fla. 5th DCA 1983). Because any harm that Wilmington suffered as a result of the mortgage fraud scheme was personal to Wilmington, Wilmington's assignment of any potential fraud, aiding and abetting fraud and conspiracy claims is invalid and Counts I, III, and IV fail.

[2] An assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor. *University Creek Assocs. II, Ltd. v. Boston Am. Fin. Group, Inc.*, 100 F. Supp. 2d 1337, 1341 (S.D. Fla. 1998). An assignee can acquire no greater rights than those possessed by the assignor. *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F. 3d 996, 1004 (11th Cir. 2004).

3

Wilmington's shoes as its assignee, but Wilmington was made whole and therefore had no damages to assign to Fidelity. In reality, Fidelity seeks to substitute **its own damages**, in the form of the settlement it made to Wilmington as a result of its claims on the forged closing protection letters and title policies, to complete the last and otherwise missing element of its claims -- a clever ploy that is nevertheless improper. The other lender, Certified, apparently did not execute an assignment and Fidelity cannot attempt the same "damages element substitution trick" with respect to the Certified loans.

Fidelity also asserts claims against Wells Fargo to the extent of its payment to Certified and Wilmington [DE 15 ¶¶ 33, 34][3] based on an alternative theory of contractual subrogation. In yet another attempt to distance itself from Cruz, Fidelity disclaims the existence of any contract and does not attach an actual title policy, but rather attaches a sample copy of a blank form of title commitment asserting that, "had it issued a policy" it would have had the sort of subrogation language included in the exemplar. *Id.* ¶¶ 29-31

### C.    The Public Record:

In 2007, Wilmington sued Fidelity in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in the case styled *Wilmington Finance, Inc. v. Fidelity National Title Insurance Company, et al.*, Case No. 07-03854 CA 40 (the "Wilmington Complaint"). The Wilmington Complaint is attached to this motion as **Exhibit A**. The Wilmington Complaint and attachments are part of the public record and the Court may consider such documents when ruling on a motion to dismiss. *Halmos v. Bombardier Aerospace Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010) (finding that the district court did not err when it relied upon public records in dismissing Complaint); *accord Makro Capital of Am., Inc. v. UBS AG*, 436 F. Supp. 2d 1342, 1350 (S.D. Fla. 2006).[4] Because Fidelity sues as Wilmington's assignee, it stands in Wilmington's shoes and is bound by the allegations in the Wilmington Complaint and attached Affidavit of Carmen Aponte ("Aponte"), who incidentally is also a Fidelity agent.

For each of the mortgage loans extended by Wilmington, Fidelity's agents issued title commitments, insurance and closing protection letters on behalf of Fidelity and on Fidelity's letterhead. (Ex. A. ¶¶ 13, 20) Fidelity's agent Aponte first learned of serious errors related to the title work for these mortgage loans in late 2005, nearly <u>seven</u> years ago, and she received a series

---

[3] Fidelity no longer asserts equitable subrogation.

[4] Public records are also appropriate for judicial notice under Federal Rule of Evidence 201.

4

of files to review in November of 2005. (Exhibit A, Ex. A Aponte Aff. ¶¶ 11-12, 18) These problems included the failure of the closing agents to record the lenders' mortgages, satisfy prior mortgage liens, and pay taxes for the subject properties. (Aponte Aff. ¶ 14) Aponte attempted to correct these deficiencies, fulfill all title requirements and issue real title insurance policies, but she was unable to do so because of the deficiencies in the files. (Aponte Aff. ¶ 15) As a result, Wilmington and Certified were left without clear title to the properties that were supposed to secure their mortgage loans, triggering provisions of the closing protection letters issued by Fidelity.

   Copies of Fidelity's closing protection letters to Wilmington are also attached as Exhibit D to the Amended Complaint. In these closing protection letters, Fidelity promised to reimburse Wilmington for losses incurred by Wilmington arising out of fraud or dishonesty of Fidelity's agents in handling Wilmington's funds or documents in connection with the closing. When Fidelity failed to reimburse Wilmington under the closing protection letters, Wilmington sued Fidelity. On November 20, 2007, as part of a settlement agreement related to the Wilmington Complaint, Wilmington assigned to Fidelity any potential claims it had against Wells Fargo. [DE 15 Ex. C] Fidelity also paid Certified as partial compensation for its losses arising from the mortgage fraud scheme. [DE 15 ¶ 30]

   It is obvious from the Amended Complaint and the Wilmington Complaint that Certified and Wilmington's claim against Fidelity was not based upon any alleged VODs issued by Bermudez. That claim derived from the forged closing protection letters and title policies, as well as Fidelity's agents' failure to obtain clean title, pay off prior liens, and otherwise ensure that their mortgage interest in the property securing the loans was perfected. Indeed, each of these loans were to be secured by mortgages on the real property. If Fidelity's agents had properly closed the transactions as required, Wilmington and Certified would have been fully secured with priority first mortgages on the subject properties. Wilmington and Certified did not sue Fidelity for bank fraud, Fidelity did not settle a bank fraud claim, and Fidelity therefore has no subrogation or indemnification claim against Wells Fargo for alleged bank fraud.

   Accordingly, and as discussed more fully below, Fidelity's Amended Complaint must be dismissed with prejudice because:

   1. Fidelity cannot bring any cause of action under a theory of contractual subrogation because Fidelity is disclaiming the existence of any contract.

2.   To the extent Fidelity steps into Wilmington's shoes as an assignee, it has no claims because it has not and cannot plead any damages. Fidelity would stand in the shoes of its insured lenders who have no damages, and Fidelity cannot substitute **its own losses** in paying on its title insurance policies and closing protection letters as a result of its own agents' fraud.

3.   Fidelity does not plead fraud with particularity required by Fed. R. Civ. P. 9(b).

4.   The face of the Amended Complaint and both the Wilmington Complaint (a public record) establish that Fidelity failed to bring its fraud, negligence, conspiracy, aiding and abetting fraud and negligent supervision and retention claims before the applicable four (4) year statute of limitations expired. Fla. Stat. § 95.11(3).[5] More specifically, it is clear from the pleadings that Fidelity's claims are time-barred with respect to twenty-six (26) of the twenty-nine (29) loans at issue.

5.   The doctrine of *in pari delicto* precludes Fidelity's claims because of Fidelity's own role in orchestrating the mortgage fraud scheme which was equal to and, in fact, much greater than any alleged assistance received from Bermudez with respect to the VODs.

6.   Fidelity's indemnification claim also fails as a matter of law because Fidelity is indisputably at fault, at least partially, for any alleged losses of Wilmington and Certified and Fidelity has not pled the existence of a special relationship.

7.   Fidelity's negligent supervision and retention claim also fails because Fidelity does not and cannot plead that Wachovia was aware of any relevant propensities on the part of Bermudez to participate in mortgage fraud, and then failed to take appropriate action.

Accordingly, this Court should dismiss Fidelity's Amended Complaint with prejudice.

---

[5] Fidelity previously sued Wells Fargo and Bermudez in case 2010-16045-CA-01. Wells Fargo was dismissed without prejudice in September of 2010, after the parties signed a Tolling Agreement. In the Tolling Agreement, Wells Fargo preserved all time-based defenses as they existed on the March 11, 2010 complaint filing date, with the tolling period ultimately lasting until May 31, 2012. A true and correct copy of the Tolling Agreement is attached hereto as Exhibit C. On May 31, 2012, Plaintiff re-filed its complaint against Wells Fargo in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 12-20984 CA 42. On June 29, 2012, Wells Fargo removed the case to this Court. [DE 1-1]

III. **MEMORANDUM OF LAW**

    A.    **Standard for Motion to Dismiss:**

To determine the merits of a Rule 12(b)(6) motion, the Court must take the factual allegations of a complaint as true. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). However, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient. *See Robinson v. Jewish Ctr. Towers, Inc.*, 993 F. Supp. 1475, 1476 (M.D. Fla. 1998). To survive a Rule 12(b)(6) motion, a claim must be "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the Fidelity pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Speaker v. U.S. Dept. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379, 2010 WL 4136634, *5 (11th Cir. 2010) (*citing Ashcroft v. Iqbal*, 556 U.S. 462 (2009).

"In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders... and exhibits attached to the complaint, also may be taken into account." *Watson v. Bally Mfg. Corp.,* 844 F. Supp. 1533, 1535, n. 1 (S.D. Fla. 1993), *aff'd,* 84 F.3d 438 (11th Cir.1996) (*quoting* 5A Charles Alan Wright & Arthur R. Miller, *Fed. Practice and P.* § 1357, at 299 (1990)). Furthermore, a court may dismiss a complaint on a dispositive issue of law regardless of the alleged facts. *Marshall County Bd. of Educ.*, 992 F.2d at 1174. Hence, where no construction of the alleged facts will support the claimed cause of action, dismissal of the cause of action is warranted. *See id.* (*citing Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir. 1991)).

    B.    **There Is No Contract To Support Contractual Subrogation:**

After recognizing that its initial equitable subrogation claim was invalid, Fidelity now proceeds under a theory of contractual subrogation [DE 15 ¶¶ 33-34] even though it vehemently denies the existence of any contract. In an attempt to distance itself from Cruz and the validity of the policies, Fidelity asserts that it did not actually issue the title commitments at issue and that they were forged. [DE 15 ¶¶ 25, 31] Fidelity nevertheless attaches an exemplar policy and wistfully observes that, had Cruz been an authorized agent, Fidelity would have had the benefit of contractual subrogation. *Id.* ¶ 31. Nevertheless, Fidelity goes on to somehow claim a right of **contractual** subrogation based upon the unexecuted, incomplete exemplar policies. *Id.* ¶¶ 33,

34.     After factually pleading, emphatically, that there is no such contract, the conclusory assertion of a contractual right must be dismissed. Fidelity cannot have its cake and eat it too.

Even if Fidelity could bring its claims under a theory of contractual subrogation, the "sample" title commitment only insured title.[6] It did not insure loan fraud. As seen above, Bermudez is only alleged to have provided unspecified VODs. This alleged conduct had nothing to do with any payment made under the title policies and/or closing protection letters, upon which the claim was based. The contractual subrogation language is limited to "the claim."

### C.     Fidelity Has No Claim As Assignee Because Wilmington Was Not Damaged:

Fidelity obtained as assignment from Wilmington and seeks to assert various tort claims against Wells Fargo for alleged fraud committed by a Wells Fargo employee on Wilmington. Wilmington, however, suffered no damages. As noted, Fidelity seeks to substitute **its own** losses deriving from the title insurance claims as the last element of each of Wilmington's claims.[7]

Damages are an obvious element of each cause of action pled. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294 (11th Cir. 2007)(injury is an element of fraud); *Schornberg v. Panorama Custom Home Builders, Inc.*, 972 So. 2d 243 (Fla. 2d DCA 2007)(injury is an element of negligence); *Haskin v. R.J. Reynolds Tobacco Company*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998)(injury is an element of conspiracy to commit fraud); *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1319 (M.D. Fla. 2010)(injury is an element of negligent supervision and retention).[8] In an effort to conceal its damages element substitution trick, Fidelity pleads in a conclusory fashion that Wilmington was damaged by Wells Fargo without explaining the basis for the alleged damages. This Court need not accept as true a legal conclusion phrased as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). According to the Amended Complaint, the mortgage fraud and other torts arose out of the Bermudez VODs. Even if one

---

[6] It is worth noting that the exemplar subrogation provision is nonsensical: "The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have **had the claim had** against any person or property in respect to the claim had this policy not been issued." [DE 15-7 p.17 ¶12(a))] In the Amended Complaint, Fidelity edited the forgoing and removed the italicized language, without indicating the omission, to make the subrogation provision look intelligible.

[7] All of the causes of action are based solely for harms caused to Wilmington and Certified. To the extent that there are no damages, all of the claims fail. This Motion also lays out a host of other reasons for dismissing.

[8] Assuming that "aiding and abetting" fraud is a cause of action in Florida, one still must lay out all of the elements of the fraud, including damages arising from the fraud.

8

ignores that these were secured real estate loans, and that such loans are based upon the value of the property and the borrowers' income, and even if one assumes that a VOD was issued for each loan and that the lender relied upon each particular VOD as the justification for each loan (which assumptions are not pled), the injury was not the making of the loan. If the loans were serviced and paid there would be no injury. If the security for the loans fully protected the lenders, there would likewise be no injury.

In any event, the Amended Complaint is devoid of allegations concerning the lenders' damages. Rather, Fidelity seeks to substitute its own alleged damages for that of Wilmington and Certified. In actuality, as demonstrated in the Wilmington Complaint, the injury would have arisen from the failure to satisfy the prior liens, leaving the lender unsecured. But Wilmington was protected by its Fidelity title insurance policies and closing protection letters and, despite Fidelity's attempt to distance itself from those policies and commitment letters, Fidelity cannot escape the fact that it paid Wilmington under the policies. It sued to collect on these instruments and received compensated from its title insurer, Fidelity. **Wilmington thus had no damages claim to assign or bring against Wells Fargo, and by extension neither does Fidelity since it stands in Wilmington's shoes.** Fidelity is fully subrogated in Wilmington's rights to pursue the parties that issued the title policies: Cruz and her entities. But there is no basis pled for suing Wells Fargo.[9] Fidelity's Amended Complaint must be dismissed with prejudice.

### D. Fidelity Does Not Plead Fraud With Particularity

A complaint must contain a short and plain statement of the grounds showing that the pleader is entitled to relief, but the circumstances of fraud must be pled with **particularity**. *See* Fed. R. Civ. P. 9(b) and 8(a)(2). See *Leisure Founders v. CUC Int'l*, 833 F. Supp. 1562, 1575 (S.D. Fla. 1993) (holding that fraud allegations must alert defendants to the precise misconduct with which they are charged); *Perret v. Wyndham Vacation Resorts, Inc.*, No. 11–CV–61904, 2012 WL 71894 *2 (S. D. Fla. Mar. 5, 2012) (holding that fraud allegations must alert defendants to the "precise" misconduct with which they are charged… "As a general rule, Rule 9(b) may be satisfied if a complaint sets forth: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement

---

[9] Exhibits A and B to Fidelity's Amended Complaint list the full face amount of each loan. Fidelity does not allege that the full face amount of the loan is Wilmington's damages, nor could it in good faith. Fidelity must also plead Wilmington's actual loss with reasonable particularity.

9

and the person responsible ...; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.").

Here, Fidelity makes no attempt to plead its fraud claims with even the slightest degree of particularity. Fidelity does not allege which of the subject loans on Exhibits A and B to its Amended Complaint were issued in reliance on specific VODs submitted by Bermudez, or what role such VODs played, if any, in the lenders' decisions to issue each specific loan (which were to be fully secured by mortgage liens in any event). Fidelity also fails to attach any of the VODs or other documents related to the underlying loans. The only loan related documents attached to the Amended Complaint are two spreadsheets, ostensibly created by Fidelity's counsel, that identify a number of loans going back to 2005. However, Fidelity must tie each loan to a specific alleged fraudulent VOD to state a claim for fraud – and Fidelity has failed to do so. Instead, Fidelity dumps the Wilmington and Certified loans together without pleading each loan separately and specifically tying each loan to an alleged Bermudez-issued VOD. Fidelity fails to clarify which, if any, of the referenced loan packages included an alleged false VOD. Such categorical fraud pleading is improper and violates Rule 9(b). Fidelity's fraud claims (Counts I and IV) must be dismissed for these additional reasons.

### E.   Fidelity's Claims Are Time-Barred:

The statute of limitations for any action founded on negligence, fraud, and any action not specifically provided for in Section 95.11, is four years. Fla. Stat. § 95.11(3). Fidelity's fraud, negligence, aiding and abetting fraud and negligent supervision and retention claims fall under this section and were brought after the applicable limitations period expired. Although statute of limitations defenses are often resolved at the summary judgment stage, resolution of the issue upon a Rule 12(b)(6) motion is entirely appropriate where, as here, it is apparent on the face of the Complaint and the Wilmington Complaint (a public record) that the claims are time barred. As discussed below, Fidelity's alleged causes of action plainly accrued more than four years before March 11, 2010, the date that Fidelity initially sued Wells Fargo.[10]

The list of loans attached as Exhibits A and B to Fidelity's Amended Complaint reflect that all of the alleged closings for which Fidelity seeks compensation occurred during 2005 and

---

[10] Fidelity thereafter dismissed Wells Fargo without prejudice, pursuant to a Tolling Agreement the parties signed, which preserved the parties' respective positions as they existed on March 11, 2010, including Wells Fargo's defense that Fidelity's claims were already time-barred when the complaint was initially filed on March 11, 2010.

10

early in 2006, with the latest closing occurring on March 17, 2006. Again, Fidelity seeks to recover for fraud arising out of the title defects issues by pointing to the VODs and asserting that its causes of action arose at the making of each loan. According to Fidelity's pleadings, the statute of limitations would have run from each loan closing date. The Aponte Affidavit establishes that an agent of Fidelity was aware of these defective transactions in 2005, and, with respect to the vast majority of the loans at issue, Fidelity was required to bring all but its indemnification claim well **before** March 11, 2010 (when Fidelity first sued Wells Fargo over these loans). Fidelity failed to do so. As discussed below, the Court must dismiss Fidelity's fraud, negligence, conspiracy, aiding and abetting fraud and negligent supervision and retention claims with prejudice because the claims are barred by the applicable statute of limitations. *See Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. v. CSX Transp., Inc.*, 522 F. 3d 1190, 1192 (11th Cir. 2008) (finding that <u>dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint</u>) (emphasis supplied); *Danhi v. Charlotte County Sheriff's Dep't,* 2006 WL 2226323 at *4 (M.D. Fla. 2006); *see also Pisani v. Diener,* 2009 WL 6621485 at *11 (S.D. Fla. 2009) (dismissing case with prejudice based on statute of limitations grounds). Because Fidelity filed an Amended Complaint without addressing the Statute of Limitations defense which was previously raised in Wells Fargo's original Motion to Dismiss, it is apparent that Fidelity cannot cure its Statute of Limitations problem, further justifying a dismissal with prejudice.

   1. **The Fraud and Aiding and Abetting Fraud claims are time-barred:**

   In an action for fraud, the four year statute of limitations begins to run when the basis of the action was either discovered or should have been discovered by the exercise of due diligence. Fla. Stat. § 95.11(3)(j); *Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc.*, 814 F. Supp. 1084, 1099 (S.D. Fla. 1992) (granting motion to dismiss where fraud claim was time barred) (emphasis added). Discovery of facts constituting fraud is determined by an objective standard, and is defined as "knowledge of facts which would have been discovered in the exercise of due diligence." *First Fed. Sav. & Loan Ass'n v. Dade Fed. Sav. & Loan Ass'n*, 403 So. 2d 1097 (Fla. 5th DCA 1981); *see also Knight v. E.F. Hutton and Co., Inc.*, 750 F. Supp. 1109, 1113 (M.D. Fla. 1990) ("the statute of limitations for an action based on fraud is strictly construed against the party bringing the action and... begins to run when the alleged basis for the action was either discovered or should have been discovered by the exercise of due diligence").

11

As outlined in the Aponte Affidavit, Fidelity was on notice of serious problems with the title work related to the mortgage loans in November of 2005 when Aponte, an agent of Fidelity, received the first set of files to review. (Exhibit A, Ex. A, Aponte Aff. ¶¶ 11, 12, 18). At that point it was incumbent upon Fidelity to immediately conduct a further review of each of these files and all related files to determine the extent of any faulty or fraudulent title work and take immediate action. Minimal effort would have revealed the failure of Fidelity's agents to properly record documents and satisfy prior liens relative to the subject loans, which would have uncovered the entire fraudulent scheme.

Moreover, after Aponte's discovery Fidelity failed to inform Wilmington of the defective title work, and Wilmington therefore continued to issue additional mortgage loans at issue. (Ex. A. ¶¶ 32, 33). Wilmington and Certified likewise could have discovered the mortgage fraud scheme themselves by simply verifying that documents related to the mortgage loans were properly recorded, that all prior liens were satisfied immediately after the subject loans closed, and that their priority mortgage interests in the properties were otherwise perfected and secured. Because even the slightest due diligence by Fidelity, Wilmington and Certified in November 2005 (at the latest) would have uncovered the <u>entire</u> scheme, Fidelity's fraud claim accrued no later than November of 2005. Thus, Fidelity was required to bring this claim before November of 2009. Fidelity failed to do so and the fraud claim is plainly time-barred as a result. Fidelity's aiding and abetting fraud claim is subject to the same statute of limitations standard and is likewise time-barred. See Fla. Stat. § 95.11(3)(j). Further, where the statute of limitations bars the underlying fraud claim, the related aiding and abetting fraud claim is also barred. *See, e.g., Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459-60 (S.D.N.Y. 2009).

      2.    **The Negligence claim is time-barred with respect to twenty-six (26) of the twenty-nine (29) loans at issue:**

The statute of limitations for negligence claims provides that an action must be commenced within four years from the date of accrual. See Fla. Stat. § 95.11(3)(a). "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). The elements of a negligence claim are: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a failure on the part of the defendant to perform that duty; and (3) injury or damage to the plaintiff proximately caused by such failure." *Rodriguez v. Favalora*, 11 So. 3d 393, 395 (Fla. 3d DCA 2009). *See also, Davis v.*

12

*Monahan*, 832 So. 2d 708, 709 (Fla. 2002) (contrasting the "last element" rule with the inapplicable "delayed discovery" rule).

Here, according to Fidelity, the last elements constituting Fidelity's negligence claim are the alleged damages its lenders suffered when they loaned funds based on fraudulent loan packages -- i.e., the closing dates of the subject loans. Thus, negligence claims deriving from Wilmington and Certified loans that closed more than four years prior to March 11, 2010 (the date that Fidelity initially sued Wells Fargo) are indisputably time-barred based on the face of the Amended Complaint and Wilmington Complaint. Specifically, of the twenty-nine (29) loans identified on Exhibits A and B to Fidelity's Amended Complaint, only the two (3) loans closed by borrower Jose Arriete on March 3, 2006 (Wilmington) and the loan closed on March 17, 2006 by borrower Elias Fleites (Certified) are not obviously time barred. Thus, to the extent Fidelity's negligence claim (Count II) is based on the twenty six (26) Wilmington and Certified loans that closed prior to March 11, 2006, the claim is barred by the statute of limitations and should be dismissed with prejudice. Again, despite amending its claims, Fidelity offered no allegations which would address Wells Fargo's apparent statue of limitations defense.

3. **The Conspiracy claim is also time-barred with respect to twenty-six (26) of the twenty-nine (29) loans at issue:**

The four year statute of limitations also applies to conspiracy claims. Fla. Stat. § 95.11(3)(o). Again, the statute of limitations begins to run when the cause of action accrues. *Young v. Ball*, 835 So. 2d 385, 386 (Fla. 2d DCA 2003). The cause of action accrues when the last element constituting the cause of action occurs. *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. 2d DCA 2007) (citing Fla. Stat. § 95.031(1)). In a civil conspiracy action, the plaintiff's injury is the last element of the cause of action and thus, the point at which the statute of limitations begins to run. *Ball*, 835 So. 2d at 386 (holding that cause of action accrued when conspirators applied for loan and received loan proceeds); 961 So. 2d at 360 ("A conspiracy cause of action accrues when the Fidelity suffers damages as a result of the acts performed pursuant to the conspiracy."); *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 809 (M.D. Fla. 1987) (declaring the last element of a conspiracy claim is injury to the Fidelity).

The gravamen of Fidelity's conspiracy claim is that Wells Fargo, through Bermudez, conspired to fraudulently procure mortgage loans from Wilmington and Certified. [DE 15 ¶ 53] According to Fidelity, Wilmington and Certified were injured, and the statute of limitations

13

began to run, when each fraudulently procured mortgage loan closed and the lenders issued the subject funds. As discussed above and set forth in Exhibits A and B to the Amended Complaint, the subject loans all closed between July 27, 2005 and March 13, 2006. It is clear from the pleadings that the limitations period for all but three of the loans expired between July 27, 2009 and March 3, 2010 – more than four years before Fidelity filed its initial complaint against Wells Fargo on March 11, 2010. Claims relating to the three loans that closed after March 11, 2006 are the only ones that are not obviously barred by the statute of limitations. Thus, to the extent it is based on loans that closed prior to March 11, 2006, Fidelity's conspiracy claim (Count III) is barred by the statute of limitations and must be dismissed with prejudice.[11]

    4.    **The Negligent Supervision claim is also time-barred with respect to twenty-six (26) of the twenty-nine (29) loans:**

A cause of action for negligent supervision and retention is subject to a four year statute of limitations. Fla. Stat. § 95.11(3). The cause of action accrues when the last element constituting a negligent supervision and retention claim occurs. Fla. Stat. § 95.031(1). As with Fidelity's negligence and conspiracy claims, the alleged harm is the last element of Fidelity's negligent supervision and retention claim. Again, according to Fidelity, the last elements constituting Fidelity's negligent supervision claim are the alleged damages its lenders suffered when they loaned funds based on fraudulent loan packages (i.e., the closing dates of the subject loans). As explained above, and without belaboring the same analysis again here, to the extent it is based on the twenty-six loans that closed before March 11, 2006 -- more than four years before Fidelity filed its initial complaint against Wells Fargo -- Fidelity's negligent supervision claim (Count V) is also barred by the statute of limitations.

    F.    **The *In Pari Delicto* Doctrine Also Bars Fidelity's Claims:**

It is clear that Fidelity played an equal, and greater, role in the fraud at issue. Fidelity may not recover damages resulting from a fraudulent scheme that its closing agents fully participated in. See *Kulla v. E.F. Hutton & Co., Inc.*, 426 So. 2d 1055, 1057 (Fla. 3d DCA 1983) ("It is a well-settled principle of law requiring little discussion that one who himself engages in a fraudulent scheme, that is, acts *in pari delicto,* may forfeit his right to any legal remedy against a

---

[11] The delayed discovery doctrine does not apply to conspiracy claims. *See Davis v. Monahan*, 832 So. 2d 708, 709-710 (Fla. 2002) (quashing appellate decision and holding that delayed discovery doctrine did not apply to conspiracy claim); *Young v. Ball*, 835 So. 2d 385, 386 (Fla. 2d DCA 2003).

14

co-perpetrator."). This doctrine is based on the principle that the "law will not lend its support to a claim founded on its own violation." *Id.* (citing *Robert G. Lassiter & Co. v. Taylor*, 128 So. 14, 19 (Fla. 1930). A party may raise the doctrine of *in pari delicto* in a motion to dismiss where, as here, the facts establishing the doctrine are ascertainable from the pleadings and other allowable sources of information like public records, and the facts establish the defense. See *In re: Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 241 (S.D. Fla. Bankr. 2010).

It is clear from the Amended Complaint and public record that Fidelity, through its agents, played a significant role in the mortgage fraud scheme. Wilmington issued the mortgage loans in reliance on representations made by Fidelity's actual and/or apparent agents that its loans were protected by title insurance policies, commitments and closing protection letters provided by Fidelity's agents in Fidelity's name. (Ex. A ¶ 22). Fidelity's agents orchestrated the fraud by issuing fraudulent title commitments, failing to pay taxes on the subject properties, failing to properly record documents, failing to satisfy prior liens, and otherwise illegally preventing Wilmington and Certified from obtaining clear title to the properties. Had Fidelity's agents not participated in the scheme, the mortgage loans would have been secured and Wilmington and Certified could have relied on the value of the properties to compensate them for any losses.

If Wells Fargo is a tortfeasor based on the alleged actions of Bermudez in <u>assisting</u> a fraud scheme by issuing VODs in the "apparent scope" of his authority as a bank employee, then Fidelity is equally responsible for the actions of its own actual or apparent agents in <u>devising and orchestrating</u> the same fraud scheme. Fidelity cannot have it both ways. This is a classic *in pari delicto* situation and Fidelity's lawsuit must be dismissed with prejudice as a result.

G. **Fidelity's Indemnification Claim Fails Because Fidelity Is Not Without Fault and There is No Special Relationship Between Wells Fargo and Fidelity:**

To state a claim under Florida law for indemnity, the plaintiff must plead the following elements: (1) it is without fault; (2) it is vicariously liable solely based on the wrong of another; (3) the party from whom indemnity is sought must be at fault; and (4) there must be a "special relationship" between the parties. *Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, *5 (S.D. Fla. 2012) (*citing Mendez-Garcia v. Galaxie Corp.*, 2011 WL 5358658, *5 (M.D. Fla. 2011). As an initial matter, as described in much more detail above, Fidelity only paid claims on the title policies, and therefore it would only be able to seek indemnification against the title agents, not against Wells Fargo for a separate alleged fraud. A cause of action for indemnity

15

requires the defendant to have engaged in some wrongdoing for which the plaintiff became responsible. *Zurich Am. Ins. Co. v. Hi-Mar Specialty Chems., LLC*, 2010 WL 298392, *2 (S.D. Fla. 2010) (*citing Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490, 493 (Fla.1979). The indemnification claims fail, however, for a host of other reasons as well.

A party seeking indemnity must allege that he is wholly without fault. *Doles v. Koden Intern., Inc.*, 779 So. 2d 609, 611 (Fla. 5th DCA 2001); *see also Zurich*, 2010 WL 298392, *2 ("In order for a common law indemnity claim to stand…the indemnitee must be faultless"). To the extent that Fidelity seeks to blur the line between the alleged mortgage fraud and the title fraud that caused its losses, Fidelity's self-serving allegation that it is without fault [DE 15 ¶ 75] is inconsistent with the facts alleged in the Amended Complaint, the Wilmington Complaint, and the Affidavit of Aponte (a Fidelity agent). Significantly, Fidelity's indemnification claim is based on "damages incurred as a result of the mortgage fraud scheme." [DE 15 ¶ 75] However, Fidelity has not alleged to have made any payment whatsoever to either Wilmington or Certified for the alleged "mortgage fraud scheme." Rather, it made payments, after being sued, based on Wilmington's and Certified claims under their title policies. [DE 15 ¶¶ 29, 30] These were issued by its own agents. Further Fidelity, as Wilmington's assignee, stands in Wilmington's shoes. Fidelity is bound by the pleading allegations of Wilmington and the affidavit of its agent Aponte. Under no analysis of logic, fact, or law can Fidelity credibly contend that it is "without fault" because all the underlying pleading and public record facts indicate otherwise.[12]

Fidelity committed these same acts with respect to the Certified mortgage loans. Fidelity's payments to Certified arose from the actions of Fidelity's agents related to defective title work on subject mortgage loans and Fidelity's related obligation to compensate Certified for the fraudulent actions of its agents. Public records confirm that Fidelity is partially, if not entirely, at fault for Certified's losses. Moreover, Fidelity cannot bring a claim for

---

[12] Additionally, a cause of action for indemnity requires the defendant to have engaged in some wrongdoing for which the plaintiff became responsible. *Zurich*, 2010 WL 298392, *2 (*citing Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490, 493 (Fla.1979)). However, as seen above, Fidelity's Amended Complaint is deficient as it has not adequately pled the purported wrongdoing for which Fidelity is seeking to hold Wells Fargo responsible. Specifically, Fidelity has failed to allege or identify the particular loan(s) that it asserts were based upon allegedly inaccurate VODs upon which Wilmington and Certified allegedly relied. Rather, Fidelity only offers vague and conclusory allegations that inaccurate VODs were produced without breaking down each loan and transaction and allowing Wells Fargo an opportunity to identify the alleged transaction(s).

indemnification against Wells Fargo on behalf of Certified, when Certified is currently suing Wells Fargo for alleged damages deriving from the same facts and circumstances.[13] Finally, to be bound by the settlement of any claims against Fidelity, Wells Fargo must have had notice of the claim and an opportunity to appear and defend the claim. *Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Group.*, 516 F. Supp. 2d 1253, 1262-63 (S.D. Fla. 2007). Wells Fargo had no such notice or opportunity to defend Certified's claims against Fidelity. For all these reasons, this Court should also dismiss Fidelity's indemnification claim (Count VI) with prejudice.

Lastly, although the existence of a special relationship is required to state a cause of action for Indemnification, Fidelity has failed to plead – and cannot plead – the existence of a special relationship between Fidelity and Wells Fargo. "Florida law is clear that in the absence of a contract, duty to pay, or other special relationship, an indemnity claim must be dismissed." *Arnold. Granz Residual Trust v. Growthink Securities, Inc.*, 2012 WL 146847 (S.D. Fla. 2010). Accordingly, where a claim fails to allege any contract, warranty, or contacts whatsoever, a claim for indemnification cannot stand. *Platinum Estates, Inc.*, 2012 WL 760791 (S.D. Fla. 2012). When an employer who is without fault is vicariously liable for its agents acts, it can obtain indemnification from that agent. Fidelity may obtain indemnity from Cruz. Wells Fargo and Fidelity had no relationship. The claim Fidelity paid was not for acts of Bermudez or Wells Fargo. Therefore, not only has Fidelity failed to plead the existence of any special relationship whatsoever as required to state a cause of action for indemnification. In fact, the only contact which is alleged to have transpired at all is contact between Bermudez and Cruz, who Fidelity disclaims as an agent. Therefore, Fidelity cannot plead the requisite "special relationship" necessary to state a claim for indemnification.

### H. Fidelity Fails To Properly Plead Negligent Supervision:

Fidelity fails to plead that Wells Fargo was on notice of any propensity of Bermudez to engage in mortgage fraud; therefore, Fidelity fails to properly state a cause of action for negligent supervision. *See Mercado v. City of Orlando*, 407 F. 3d 1152, 1162 (11th Cir. 2005) (applying Florida law). To sustain a claim for negligent supervision, Fidelity must allege facts that indicate an employee's "harmful propensity" to engage in the allegedly tortious conduct at

---

[13] On July 17, 2006, Certified filed its own complaint against Wachovia based on the same facts as alleged in this Complaint (Case number 2006-13814-CA-01), which remains pending in the Eleventh Judicial Circuit in and for Miami-Dade County (the "Certified Case"). A true and correct copy of the docket in the Certified Case is attached to this motion as Exhibit B.

issue. *Blue v. Miami-Dade Cnty.*, 2011 WL 2447699, *3-*4 (S.D. Fla. 2011). Fidelity bears the burden of showing that the employer had actual or constructive knowledge of the employee's relevant harmful propensities. *See id.; see also Stephenson v. School Bd. of Polk Cnty.*, 467 So. 2d 1112, 1112 (Fla. 2d DCA 1985). Consequently, Fidelity cannot bring a claim for negligent supervision without pleading underlying facts sufficient to establish Wells Fargo's actual or constructive knowledge that Bermudez had a propensity to commit mortgage fraud or even fraud in general. *Mercado*, 407 F. 3d at 1162; *see also Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1298-99 (M.D. Fla. 2006) (granting motion for summary judgment when Fidelity failed to demonstrate that employer had knowledge of an employee's propensity to assault co-workers).

    Fidelity alleges that Wachovia, Wells Fargo's predecessor, disciplined Bermudez for improperly linking accounts, incorrectly opening accounts, referring a potential client to an outside broker who represented that he was affiliated with Wachovia, and having loan documents notarized at another Wachovia branch when parties at his branch refused to notarize the documents. [DE 15 ¶ 18] Fidelity also asserts that Bermudez had Wachovia loan documents notarized at another Wachovia branch after parties at his own Wachovia branch refused to notarize the documents because there was a "false power of attorney" provided in the transaction. *Id*. These allegations are as insufficient as they are misleading. Importantly, Fidelity does not allege that Bermudez falsified a power of attorney, or that the documents at issue were actually fraudulent or unauthorized by the bank customer. Fidelity's vague and misleading allegations amount to nothing more than alleged shortcuts and bank procedure violations by a poor performing employee. Such facts would not put Wells Fargo on notice that Bermudez had the propensity to participate in a mortgage fraud scheme. The fact that an employee performs poorly or fails to follow proper procedure would not put an employer on notice that the employee has such criminal propensities. It is a significant leap to assume that simply because Bermudez performed poorly and failed to follow bank policy that Wachovia should have known that Bermudez had the propensity to assist in a mortgage fraud.

    Even if Wells Fargo suspected that Bermudez was being nervous, dishonest, or less than forthcoming when questioned about his failure to follow bank procedures, that still would not be enough to put the bank on notice that Bermudez had a propensity to assist Fidelity's closing agents in a mortgage fraud scheme. Indeed, employees are sometimes less than forthcoming when questioned about performance issues for fear of losing their jobs. None of the actions for

18

which Wachovia disciplined Bermudez provided any indication that Bermudez had a propensity to commit fraud as alleged in the Amended Complaint. Following Fidelity's logic, Wells Fargo should be on notice that employees who incorrectly link or open accounts, or fail to follow bank procedures, are potential fraudsters. This belies sound reasoning and is inconsistent with the law of negligent supervision. Thus, to the extent this claim is not otherwise barred by the statute of limitations and the other grounds noted above (and it is), the Court should also dismiss Fidelity's negligent supervision and retention claim (Count V) for failure to plead sufficient underlying facts establishing the claim.

### III. CONCLUSION

For all the foregoing reasons and authority, Wells Fargo respectfully requests that the Court enter an Order dismissing Fidelity's Amended Complaint with prejudice, and any such other and further relief the Court deems appropriate.

Submitted this 27th day of August, 2012.

> **GRAYROBINSON, P.A.**
> *Counsel for Defendant Wells Fargo Bank, N.A.*
> 401 East Las Olas Boulevard, Suite 1850
> Fort Lauderdale, Florida 33301
> Telephone: (954) 761-8111
> Facsimile: (954) 761-8112
>
>
> /s/  Jay Thornton
> J. Jay Thornton
> Florida Bar No. 323070
> *jay.thornton@gray-robinson.com*
> Alissa M. Ellison
> Florida Bar No. 015992
> *aellison@gray-robinson.com*
> F. Ryan Waters
> Florida Bar No. 073619
> *ryan.waters@gray-robinson.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 27, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to: Lawrence A. Kellogg, Esq. and Amanda Quirke, Esq., Levine Kellogg Lehman Schneider and Grossman LLP, 201 S. Biscayne Boulevard, 22nd Floor, Miami, Florida 33131.

/s/ J. Jay Thornton
For Gray Robinson, P.A.